# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BYRON PIERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cv-1170-STE |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 35-59). The

Appeals Council denied Plaintiff's request for review. (TR. 26-28). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from December 20, 2011, his alleged onset date, through March 31, 2014, the date he was last insured. (TR. 37). At step two, the ALJ determined that Mr. Pierson had the following severe impairments: PTSD; major depression; generalized anxiety disorder; panic disorder with agoraphobia; gout; hypertension; ulnar neuropathy; degenerative disc disease of the cervical spine; and status post renal cell carcinoma of the left kidney with left nephrectomy in 2002. (TR. 38). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 50).

At step four, the ALJ concluded that Mr. Pierson was unable to perform any past relevant work, but retained the residual functional capacity (RFC) to:

> [L]ift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can sit for about six hours during an eight-hour workday and stand and walk for about six hours during an eight-hour workday (20 CFR 404.1567(c)). The claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead. The claimant can frequently handle and finger with his left upper extremity (non-dominant). The claimant can understand, remember, and carry out simple, routine, and some complex tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public (semi-skilled).

(TR. 53, 58).

The ALJ then proceeded to make findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 89-90). Relying upon the testimony of the VE, the ALJ concluded that Mr. Pierson was not disabled based on his ability to perform two of the identified jobs. (TR. 59).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Mr. Pierson alleges the ALJ erred in (1) considering a treating source's opinion, and (2) formulating the RFC. (ECF No. 21:20-30).

3

## V. ANALYSIS

### A. The ALJ's Consideration of Dr. Wigdor's Opinion

#### 1. ALJ's Duty to Assess a Treating Source's Opinion

An ALJ must follow a particular analysis in evaluating a treating source's opinion. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R. § 404.1527.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any

4

subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### 2. Dr. Wigdor's Opinion

The record contains evidence of Plaintiff's attendance at group therapy with Dr. Reubin M. Wigdor, Ph.D., from March 20, 2014 through August 11, 2014. (TR. 636-640). Dr. Wigdor completed a Mental Impairment Questionnaire on February 10, 2015. (TR. 686-691). Dr. Wigdor noted Plaintiff's PTSD diagnosis, identified various signs and symptoms, and listed his current GAF score as 51. (TR. 686-687). He also noted that Plaintiff had "severe complications resulting from trauma he experienced in the military," including nightmares disturbing his sleep, the inability to "concentrate long enough to carry out significant activities of daily living," and depressed behavior and affect. (TR. 687). Dr. Wigdor opined that Mr. Pierson's prognosis was guarded, he would need to miss work about three times per month due to his symptoms, and he had a fair or poor ability to perform various work-related tasks which he attributed to Plaintiff's fear, depression, and not being able to sleep well. (TR. 688-690).

### 3. The ALJ's Evaluation of Dr. Wigdor's Opinion

The ALJ quoted the entirety of Dr. Wigdor's brief notes regarding Plaintiff's group therapy sessions and noted that they "fail[ed] to include any mental status findings regarding [Mr. Pierson]" and did not "describe any symptoms and/or limitations relevant to [Mr. Pierson] or even any complaints that [he] might have expressed." (TR. 47, 636-640). Then, the ALJ determined he was "not disposed to assign any weight to the opinions

5

of Dr. Wigdor." TR. 49; *see also* TR. 57 ("[T]he undersigned assigns not [sic] weight to the opinions expressed by Dr. Wigdor in [TR. 685-692]."). In support of his decision to give no weight to Dr. Wigdor's opinion, the ALJ considered the proper factors.

First, the ALJ considered the length and frequency as well as the nature and extent of Mr. Pierson's treatment relationship with Dr. Wigdor by noting that the treatment spanned just five months and the record does not reflect that he saw Plaintiff in a private, one-on-one context. (TR. 49). The ALJ also considered whether Dr. Wigdor's opinion was supported by relevant evidence, citing the lack of mental status findings regarding Mr. Pierson in Dr. Wigdor's notes—including the absence of descriptions of "any symptoms and/or limitations relevant to [Plaintiff] or even any complaints that [Plaintiff] might have expressed." (TR. 49). He also noted that Dr. Wigdor's significant limitations were internally inconsistent, as he also found that Plaintiff could manage his own benefits. (TR. 49).

The ALJ further found that Dr. Wigdor's opinions were inconsistent with the record as a whole, finding that the assessed limitations were "inconsistent with other medical evidence/mental status exam findings dated prior to [Mr. Pierson's] date last insured, as well as inconsistent with the opinions of various medical consultants for the State agency." (TR. 49). Ultimately, the ALJ found that the assessed limitations were "so severe as to essentially be almost if not totally incapacitating" which was not established by the medical record. (TR. 49).

### 4. The ALJ Did Not Err in Evaluating Dr. Wigdor's Opinion

Plaintiff contends the ALJ's reasons for rejecting Dr. Wigdor's opinion were not supported by substantial evidence. (ECF No. 21:27). More specifically, Plaintiff disagrees with the ALJ's finding that Dr. Wigdor's opinion was inconsistent with other substantial evidence of record. (ECF No. 21:23). The Court initially notes that Mr. Pierson does not contest the ALJ's consideration of the length and frequency or nature and extent of his treatment with Dr. Wigdor. Further, Plaintiff does not appear to contest the ALJ's finding that Dr. Wigdor's opinion was not supported by his own records. Indeed, Mr. Pierson concedes that "Dr. Wigdor's treatment notes are unfortunately sparse." (ECF No. 21:25). Instead, Plaintiff contests the ALJ's finding that the opinion was unsupported by the record, arguing instead that the opinion was consistent with his longitudinal medical record. (ECF No. 21:25).

Mr. Pierson argues that "Dr. Wigdor's opinions are well supported by the medical evidence of record (at least with respect to evidence from Plaintiff's treating healthcare providers)." (ECF No. 21:23). In support of his argument, Plaintiff references records from his treatment with Dr. Roy T. Maxwell, Ed.D. (ECF No. 21:24-25). Specifically, Plaintiff addresses monthly psychotherapy appointments in which Dr. Maxwell "consistently noted" that Mr. Pierson had PTSD symptoms based on his experiences during the Vietnam War and documented Plaintiff's "significant and ongoing nightmares, intrusive thoughts which induce physiological responses (panic attacks), with increasingly stronger feelings of depression and patterns of isolation." ECF No. 21:24 (citing TR. 389) (internal quotations omitted). Mr. Pierson also notes that he avoided situations or people

7

arousing recollections of trauma. ECF No. 21:24 (citing TR. 389-390). He also cites Dr. Maxwell's treatment notes as supporting deteriorating intellectual functioning and short-term memory problems. ECF No. 21:24 (citing TR. 390-391). Further, Dr. Maxwell assessed GAF scores ranging from 40-45. ECF No. 21:24-25 (citing TR. 361-379, 386-387, 392). Finally, Plaintiff notes that he was getting worse, his prognosis was poor, and "had no reasonable probability of improving to the point of being cured and/or employable." ECF No. 21:25 (citing TR. 361-379) (internal quotations omitted).

Mr. Pierson next contends the ALJ generally disregarded Dr. Maxwell's findings, but referred "to a few medical records the ALJ believed contradicted Dr. Maxwell's treatment records" in support of his treatment of those findings (ECF No. 21:25).[1] Specifically, Plaintiff refers to medical records from May 4, 2012 and April 17, 2013, about which the ALJ noted Plaintiff's mood was within normal limits and had included a negative depression screen. (ECF No. 21:25). But, Mr. Pierson asserts those screens were not inconsistent with Plaintiff's overall treatment, as the questions were regarding hopelessness and suicide, and "even if Plaintiff had an occasional good day, the ALJ is required to consider the entire evidence of record." (ECF No. 21:25-26).

Plaintiff's arguments are without merit. The ALJ engaged in a thorough discussion of Dr. Maxwell's records and referenced each portion identified by Plaintiff. *See* TR. 41-43. Ultimately, the ALJ found that Dr. Maxwell's opinion that Plaintiff was unable to work was inconsistent with other substantial evidence of record. (TR. 45). In the decision, the

---

[1] Plaintiff does not directly challenge the weight given to Dr. Maxwell's opinion. But it appears Plaintiff addresses Dr. Maxwell's record and opinion because, in part, the ALJ adopted his prior analysis when he weighed Dr. Wigdor's opinion. (TR. 49).

ALJ noted that Plaintiff underwent a ninety-day anxiety and stress management class, after which he had negative depression screens in October 2010 and April 2013. (TR. 40). The ALJ noted that despite Plaintiff's reports of PTSD symptoms since the Vietnam War and Dr. Maxwell assessing him GAF scores between 40 and 45, he "was able to perform substantial gainful activity up until deciding to retire at the age of 62 or 63." (TR. 41-42). Further, the ALJ found the difficulties reported by Dr. Maxwell were not consistent with Plaintiff's activities of daily living as reported by Plaintiff in his September 2013 function report. (TR. 41). The ALJ also noted that Plaintiff went to San Antonio on a vacation to Water World and Sea World, which was inconsistent with records indicating he did not like being around people. (TR. 43). In other words, the ALJ gave specific, legitimate reasons for discounting the opinions. Thus, the ALJ's reasoning is supported by substantial evidence.

Plaintiff also contends Dr. J. Ronald Cruse, Ph.D., made findings consistent with Dr. Maxwell and Dr. Wigdor regarding deficits in Plaintiff's memory.[2] (ECF No. 21:27.) Specifically, Plaintiff notes that Dr. Cruse observed Plaintiff's mood to be sad, found Plaintiff to have below-average recall and average memory, and placed his GAF at 50. ECF No. 21:27 (citing TR. 668-669). But the ALJ considered each of these cited findings. (TR. 45-46).

"[T]o the extent [Mr. Pierson] contends the ALJ erred in weighing the evidence, including that from his providers, [the Court has] no authority to reweigh it." *Terwilliger*

---

[2] Mr. Pierson also acknowledged that Dr. Cruse's opinion differed from Dr. Maxwell and Dr. Wigdor's in other ways. (ECF No. 21:27).

v. *Comm'r, Soc. Sec. Admin.*, No. 19-1028, 2020 WL 290421, at *3 (10th Cir. Jan. 21, 2020) (*citing Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013)). Instead, the Court is tasked with "ensur[ing] the ALJ properly evaluated it." *Id.* Here, Plaintiff's argument amounts to an invitation to reweigh the evidence. The ALJ's analysis was not legally deficient and the reasons provided by the ALJ for rejecting Dr. Wigdor's opinions are supported by substantial evidence. Because the ALJ's evaluation of the opinion is grounded in substantial evidence, there is no error.

### B. The ALJ's Consideration of the RFC

Plaintiff contends "the substantial evidence of record . . . supports more substantial limitations in terms of Plaintiff's abilities to 'understand, remember, and carry out simple, routine, and some complex tasks,' as well as his ability to 'respond appropriately to supervisors, co-workers, and usual work situations.'" ECF No. 21:29 (quoting TR. 53). Mr. Pierson asserts the ALJ should have assessed a more restrictive RFC. (ECF No. 21:30). Based on the VE's testimony—that a hypothetical individual could not perform the identified jobs if he had difficulty relating to authority figures and had problems maintaining focus for up to twenty percent of the time—Plaintiff argues that he could not maintain competitive employment. ECF No. 21:30 (citing TR. 93).

Plaintiff cites *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), for the proposition that the ALJ must discuss any uncontroverted evidence he chooses not to rely on. (ECF 21:28-29). He also cites *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004), which prohibits an ALJ from picking and choosing through an uncontradicted medical opinion. (ECF 21:29). In support of his argument, Plaintiff notes that Dr. Cruse's

report indicates that Plaintiff had impairment in recall, concentration, and behavioral judgment. (TR. 669). He also cites Dr. Maxwell's March 11, 2011 psychological evaluation in which Dr. Maxwell noted Plaintiff had severe short-term memory problems. (TR. 391). Plaintiff also generally cites Dr. Wigdor's findings as supporting a different RFC finding. (ECF No. 21:29).

The ALJ, however, specifically addressed Dr. Cruse's report that Plaintiff's "cognitive problems included impairment in recall, concentration and behavioral judgment." (TR. 46.) Dr. Cruse also noted that Plaintiff's recall was below average, immediate memory was average, concentration was below average, and fund of information was average. (TR. 46). Thus, Plaintiff's argument that the ALJ ignored Dr. Cruse's records with regard to his memory or ability to interact with others at the workplace is unfounded.

The ALJ did not specifically reference the sentence in which Dr. Maxwell noted Plaintiff's "severe short term memory problems." (TR. 391). But, as noted above, Dr. Cruse found that Plaintiff's immediate memory was average and his recall was below average. (TR. 688). Therefore, Dr. Maxwell's finding of severe memory problems are not uncontroverted. Further, Plaintiff has not shown the evidence was particularly probative, as the portion of the VE's testimony cited by Plaintiff referred to Plaintiff's ability to get along with others at the workplace and focus, not memory. (TR. 93). As such, the ALJ was not required to specifically discuss the particular portion of Dr. Maxwell's medical record in the decision.

Although Plaintiff generally cites Dr. Wigdor's records in support of her argument, as referenced above, the ALJ quoted the entirety of Dr. Wigdor's treatment notes verbatim and thoroughly discussed the Mental Impairment Questionnaire containing his opinion. (TR. 47-48). Thus, the ALJ did not fail to discuss any evidence from Dr. Wigdor's records. Thus, considering the arguments presented by Plaintiff in his brief, the ALJ did not improperly ignore evidence when formulating the RFC.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on March 6, 2020.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE